UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 21-cr-35 (NEB/LIB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Dayne Adrian Sitladeen (1),<br>Muzamil Aden Addow (2), | |
| Defendants. | |

---

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636 and Local Rule 72.1, upon Defendants Dayne Adrian Sitladeen and Muzamil Aden Addow's Joint Motion to Dismiss. [Docket No. 57]. The Court held a Motions Hearing on June 7, 2021, regarding the parties' pretrial motions. At the conclusion of the June 7, 2021, Motions Hearing, the Court took Defendants' Motion to Dismiss under advisement on the written submissions of the parties.

For reasons discussed herein, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 57], be **DENIED**.

**I.   Background**

Defendants are charged with one count of "Firearm Possession by Aliens Illegally in the United States" in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2). (Indictment [Docket No. 19]). Specifically, the Indictment alleges that Defendants "each aiding and abetting the other, and each being aliens illegally and unlawfully in the United States, and each knowing they were an alien illegally and unlawfully in the United States, did knowingly possess, in and affecting interstate commerce," sixty-seven firearms as described in the Indictment. (Id.).

Title 18 U.S.C. § 922(g)(5)(A) provides that it is "unlawful for any person . . . who, being an alien . . . is illegally or unlawfully in the United States," "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Title 18 U.S.C. § 924(a)(2) describes the possible penalties for a violation of § 922(g).

## II.  Defendants' Motion to Dismiss. [Docket No. 57].

Defendants argue that the present Indictment should be dismissed because "the statute with which [they] have been indicted is unconstitutional." (Defs.' Mot. [Docket No. 57]). Specifically, Defendants contend that 18 U.S.C. § 922(g)(5)(A) violates "the Fifth Amendment's due process guarantee of equal protection and the Second Amendment's right to bear arms." (Defs.' Mem., [Docket No. 58], at 1).

### A.  Second Amendment

Defendants argue that the Indictment should be dismissed because § 922(g)(5)(A) is "facially unconstitutional and unconstitutional as applied to" Defendants because it "eliminates Second Amendment protections as to [an] entire class of individual[s]—unauthorized aliens," such as Defendants, and "[a]liens are within 'the people' protected by the Second Amendment." (Defs.' Mem., [Docket No. 58], at 7–8). Defendants acknowledge that Eighth Circuit precedent provides that "'the protections of the Second Amendment do not extend to aliens illegally present' in the United States, and that that holding is binding on this Court." (Id. at 9) (quoting United States v. Flores, 663 F.3d 1022, 1023 (8th Cir. 2011) (per curiam)).

Defendants contend, however, that "there are reasons to question the Flores holding," that "Flores is ripe for reconsideration," and Flores "should be overruled." (Defs.' Mem., [Docket

2

No. 58], at 7–10). Defendants base their argument on their interpretation of previous caselaw from the Eighth Circuit Court of Appeals and the United States Supreme Court, as well as, what the Defendants describe as "a growing weight of appellate authority" from Circuit Courts other than the Eighth Circuit Court of Appeals recognizing "that unauthorized aliens are or may be protected by the Second Amendment." (Id. at 10).

Despite Defendants argument they also acknowledge "that this Court may be bound by Flores," but they raised the argument in the present Motion to "preserve for appeal the issue of whether unauthorized aliens are among 'the people' protected by the Second Amendment." (Id. at 11).

In Flores, the Eighth Circuit Court of Appeals specifically held that "the Second Amendment do[es] not extend to aliens illegally present in" the United States. United States v. Flores, 663 F.3d 1022, 1023 (8th Cir. 2011) (per curium).[1] The Flores decision has not been overturned. Even if this Court was persuaded by Defendants' argument, which it is not, this Court is bound by Eighth Circuit precedent as found in Flores. See, e.g., Hood v. United States, 342 F.3d 861, 864 (8th Cir. 2003) ("The District Court, however, is bound, as are we, to apply the precedent of this Circuit."); Beaulieu v. Preece, No. 14-cv-552 (DWF/JSM), 2014 WL 1338791, at *3 n.2 (D. Minn. Apr. 3, 2014) (explaining that even where there is a split in the law between the various Circuits' Courts of Appeals, the Courts in the District of Minnesota are bound by controlling precedent from the Eighth Circuit Court of Appeals); United States v. Dotstry, No. 99-cr-383 (JRT/FLN), 2019 WL 1976430, at *2 (D. Minn. May 3, 2019), aff'd, 792 F. App'x 415 (8th Cir. 2020); United States v. Koech, No. 18-cr-182 (DWF/LIB), 2018 WL 4905602, at *1 (D. Minn. Oct. 9, 2018), aff'd, 992 F.3d 686 (8th Cir. 2021); Barney v. Eng., No.

---

[1] The Eighth Circuit Court of Appeals is not the only Circuit Court to have reached this same conclusion. See, United States v. Portillo-Munoz, 643 F.3d 437, 439–42 (5th Cir. 2011), cert. denied 566 U.S. 963 (2012); United States v. Carpio-Leon, 701 F.3d 974, 975–82 (4th Cir. 2012).

3

11-cv-166 (ADM/LIB), 2011 WL 832476, at *1 (D. Minn. Mar. 3, 2011); United States v. Bevins, No. 14-cr-123 (RHK/LIB), 2014 WL 12693887, at *5 (D. Minn. July 29, 2014), report and recommendation adopted, 2014 WL 12693898 (D. Minn. Sept. 16, 2014).[2]

Based on controlling Eighth Circuit precedent, Defendants' Second Amendment based argument fails. See, United States v. Flores, 663 F.3d 1022, 1023 (8th Cir. 2011). Under this controlling precedent, Defendants are simply not entitled to constitutional protections under the Second Amendment. Thus, the Court concludes that 18 U.S.C. § 922(g)(5) withstands Defendants' Second Amendment challenge.

### B. Equal Protection

Defendants also argue that "[c]riminalizing all unauthorized aliens who possess firearms violates the Due Process clause's guarantee of equal protection of the laws." (Defs.' Mem., [Docket No. 58], at 7). Specifically, Defendants contend that the strict scrutiny standard applies because the Second Amendment's right to bear arms is a fundamental right, and 18 U.S.C. § 922(g)(5) cannot withstand the strict scrutiny standard. (Defs.' Mem., [Docket No. 58], at 4–7). Defendants, in large part, base this contention on their assertion that "[a] categorical ban on all unauthorized aliens possessing firearms does not further the Government's interest in preventing crime in a sufficiently tailored manner, if at all." (Id. at 6).

---

[2] Moreover, even assuming solely for the sake of argument that the protections of the Second Amendment did extend to Defendants, the Court still finds Defendants argument to be unpersuasive. Defendants argue that § 922(g)(5)(A) cannot withstand constitutional scrutiny because it must withstand "some form of heightened scrutiny, whether intermediate or strict." (Defs.' Mem., [Docket No. 58], at 11). Defendants' argument is, however, waylaid by the very cases to which they cite. See, Unites States v. Huitron-Guizar, 678 F.3d 1164 (10th Cir. 2012). In Huitron-Guizar, the Court assumed, without deciding, that defendant—an unauthorized alien—was entitled to the protections of the Second Amendment, and the Huitron-Guizar Court analyzed 18 U.S.C. § 922(g)(5) under the lesser intermediate scrutiny standard. In contrast to Defendants' argument here, the Huitron-Guizar Court concluded that § 922(g)(5) withstood constitutional muster under the intermediate scrutiny standard. Unites States v. Huitron-Guizar, 678 F.3d 1164, 1165–70 (10th Cir. 2012). The Huitron-Guizar Court noted that "courts must defer to Congress as it lawfully exercises its constitutional power to distinguish citizens from non-citizen, or between lawful and unlawful aliens, and to ensure safety and order." Id. at 1170.

"The Equal Protection Clause of the Fourteen Amendment provides that no state shall deny to any person within its jurisdiction the equal protection of the laws, and it applies to the federal government though the Due Process Clause of the Fifth Amendment." New Doe Child #1 v. United States, 901 F.3d 1015, 1027 (8th Cir. 2018) (citations and internal quotation marks omitted). "The Equal Protection Clause demands that similarly situated individuals be treated alike." Id.; see, Am. Family Ins. v. City of Minneapolis, 836 F.3d 918, 921 (8th Cir. 2016).

"Unless a law burdens a fundamental right, targets a suspect class, or has a disparate impact on a protected class and was motivated by a discriminatory intent, [Courts] apply rational basis scrutiny to the challenged law." New Doe Child #1, 901 F.3d at 1027. To withstand rational basis review, "the classification must only be rationally related to a legitimate government interest." Am. Family Ins., 836 F.3d at 921. "Under rational basis review, [t]he government's different treatment of persons will be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Brikova v. Holder, 699 F.3d 1005, 1008 (8th Cir. 2012) (alteration in original) (internal quotations omitted).

In the present case, Defendants are not members of a "suspect class." In fact, Defendants do not argue that they are members of a suspect class. (Defs.' Mem. [Docket No. 58]). And the United States Supreme Court has "reject[ed] the claim that 'illegal aliens' are a 'suspect class.'" Plyler v. Doe, 457 U.S. 202, 219 n.19 (1982).

Defendants argue that 18 U.S.C. § 922(g)(5)(A) burdens a fundamental right. The Court finds Defendants argument unpersuasive because applicable caselaw demonstrates that 18 U.S.C. § 922(g)(5)(A) does not burden or implicate a fundamental right because § 922(g)(5)(A) applies only to persons to whom the Second Amendment does not extend. Assuming solely for the sake

of argument the Second Amendment's right to bear arms is a fundamental right, § 922(g)(5)(A) on its face applies only to "alien[s]" who are "illegally or unlawfully in the United States," and as discussed above, an "alien" who is "illegally or unlawfully in the United States" is not entitled to the constitutional rights provided for in the Second Amendment. The Eighth Circuit Court of Appeals has specifically held that "the Second Amendment do[es] not extend to aliens illegally present in" the United States. United States v. Flores, 663 F.3d 1022, 1023 (8th Cir. 2011) (per curium). Because § 922(g)(5)(A) is applicable only to persons to whom the Second Amendment does not extend, it cannot be said that § 922(g)(5)(A) burdens the rights provided for in the Second Amendment.

Because Defendants "are not members of a suspect class and their claims do not involve a fundamental right, their federal equal protection claim is subject to rational basis review." Am. Fam. Ins. v. City of Minneapolis, 836 F.3d 918, 921 (8th Cir. 2016) (quoting Ganley v. Minneapolis Park & Recreation Bd., 491 F.3d 743, 747 (8th Cir. 2007)).[3] Thus, to pass constitutional muster, § 922(g)(5)(A) need only be rationally related to a legitimate government interest. Am. Fam. Ins., 836 F.3d at 921.[4]

---

[3] Defendants heavily rely on Plyler v. Doe, 457 U.S. 202 (1982), for their assertion that a heightened level of scrutiny must apply in the present case. (Defs.' Mem., [Docket No. 58], at 4–5). This reliance is misplaced. Plyer involved the constitutionality of a Texas state law which categorized persons based on their immigration status. See, Plyler v. Doe, 457 U.S. 202 (1982). Such an analysis is inapplicable to the current action involving a federal law which distinguishes persons based on their immigration status. See, Mathews v. Diaz, 426 U.S. 67, 84–87 (1976). The Supreme Court of the United States has noted that an "equal protection analysis," like the one in Plyler, "involves significantly different considerations because it concerns the relationship between aliens and the States rather than between aliens and the Federal Government." Diaz, 426 U.S. at 84–85. "[A] division by a State of the category of persons who are not citizens of that State into subcategories of United States citizens and aliens has no apparent justification, whereas, a comparable classification by the Federal Government is a routine and normally legitimate part of its business." Id. at 85. In addition, "whereas the Constitution inhibits every State's power to restrict travel across its own borders, Congress is explicitly empowered to exercise that type of control over travel across the borders of the United States." Id.

[4] This conclusion is not at odds with District of Columbia v. Heller, 554 U.S. 570 (2008), as Defendants imply because Heller involved a citizen of the United States as opposed to an "alien" who "is illegally or unlawfully in the United States."

Defendants fail to argue that § 922(g)(5)(A) cannot survive a rational basis review. On the other hand, the Government identifies legitimate government interests in § 922(g)(5)(A) noting that "[p]ersons not legally in the United States . . . are 'harder to trace and more likely to assume a false identity,'" and the Government further asserts that "Congress may have concluded that those who show a willingness to defy our laws are candidates for further misfeasance or at least a group that ought not be armed when authorities seek them." (Gov't's Mem., [Docket No. 61], at 15–16) (quoting United States v. Huitron-Guizar, 678 F.3d 1164, 1170 (10th Cir. 2012)).

"The 'principal purposes' of the Gun Control Act of 1968 are to 'make it possible to keep firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency, and to assist law enforcement authorities in the States and their subdivisions in combating the increasing prevalence of crime." United States v. Huitron-Guizar, 678 F.3d 1164, 1169–70 (10th Cir. 2012) (quoting S. Rep. No. 90-1097, at 22 (1968), 196 U.S.C.C.A.N. 2112, 2113–14)). As relevant to the present action, "[t]he alien in possession ban was incorporated from a predecessor statute by the 1986 Firearm Owner's Protection Act, . . . likewise with [the] purpose of keeping instruments of deadly force away from those deemed irresponsible or dangerous." United States v. Huitron-Guizar, 678 F.3d 1164, 1169–70 (10th Cir. 2012) (quoting S. Rep. 98-583, at 12 (1986)).

As the Tenth Circuit Court of Appeals previous noted when discussing the constitutionality of § 922(g)(5)(A), "Congress may have concluded that illegal aliens, already in probable present violation of the law, simply do not receive the full panoply of constitutional rights enjoyed by law-abiding citizens"; "that such individuals, largely outside the formal system of registration, employment, and identification, are harder to trace and more likely to assume a false identity"; or "that those who show a willingness to defy our laws are candidates for further

misfeasance or at least a group that ought not be armed when authorities seek them." Huitron-Guizar, 678 F.3d at 1170. The Court here finds this rationale to be persuasive.

While "it is surely a generalization to suggest, as courts do, that unlawfully present aliens, as a group, pose a greater threat to public safety, . . . general laws deal in generalities." Id. (citations omitted). The generalities in § 922(g)(5)(A) are similar to the generalities in § 922(g)(1) which applies prohibitions to a "class of convicted felons," including "non-violent offenders." Huitron-Guizar, 678 F.3d at 1170. "The bottom line is that crime control and public safety are indisputably 'important' interest." Huitron-Guizar, 678 F.3d at 1170.

On the record now before the Court, the Government has provided more than a "reasonably conceivable state of facts that" provides a "rational basis for the classification" of persons in § 922(g)(5)(A). As apparent from the above discussion, other Courts have reached this same conclusion. See, United States v. Huitron-Guizar, 678 F.3d 1164, 1170 (10th Cir. 2012). On this basis, the Court finds that 18 U.S.C. § 922(g)(5) withstands Defendants' Equal Protection challenge.

### III. Conclusion

Therefore, based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Defendants' Motion to Dismiss, [Docket No. 57], be **DENIED**.

Dated: June 24, 2021                                         s/Leo I. Brisbois
                                                             Hon. Leo I. Brisbois
                                                             U.S. MAGISTRATE JUDGE

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.