UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 21-CR-35 (NEB/LIB) |
| Plaintiff, | |
| v. | ORDER ACCEPTING REPORT AND RECOMMENDATION |
| DAYNE ADRIAN SITLADEEN (1) and MUZAMIL ADEN ADDOW (2), | |
| Defendants. | |

Defendants Dayne Adrian Sitladeen and Muzamil Aden Addow were indicted for being illegal aliens in possession of firearms in violation of Title 18, United States Code, Sections 922(g)(5) and 924(a)(2). Sitladeen and Addow jointly moved to dismiss the Indictment. In a Report and Recommendation, United States Magistrate Judge Leo I. Brisbois recommends denying Defendants' motion. (ECF No. 76 ("R&R").) For the reasons below, the Court accepts the R&R and denies Defendants' motion.

BACKGROUND

In January 2021, Defendants, who are both Canadian citizens unlawfully in the United States, were pulled over for speeding. (ECF No. 1-1 ¶¶ 5, 17.) Defendants gave false identification and inconsistent statements to the officer, and the officer smelled marijuana. (*Id.* ¶¶ 6–11.) Addow consented to a partial search of the vehicle, and the officer found a bag that contained roughly a dozen firearms. (*Id.* ¶¶ 12–13.) The officers

searched the other bags in Defendants' vehicle and found sixty-seven firearms in total. (*Id.* ¶ 14.)

Defendants were each indicted on one count of firearm possession by an alien illegally in the United States in violation of Title 18, United States Code, Section 922(g)(5)(A). (ECF No. 19.) Defendants filed several motions, including a motion to dismiss the Indictment as unconstitutional. (ECF No. 57.) Both Defendants later agreed to conditionally plead guilty pending the outcome of their motion to dismiss and withdrew all other motions. (ECF Nos. 67, 69.) Judge Brisbois issued an R&R, recommending that the Court deny Defendants' motion. (R&R at 8.) Defendants objected. (ECF No. 78 ("Obj.").) The Court reviews de novo the parts of the R&R to which Defendants object. 28 U.S.C. § 636(b)(1); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995).

## ANALYSIS

Section 922(g)(5)(A) prohibits any "alien [who] is illegally or unlawfully in the United States" from possessing a firearm or ammunition. 18 U.S.C. § 922(g)(5)(A). Defendants contend that Section 922(g)(5)(A) violates the Second Amendment's right to bear arms and the Fifth Amendment's guarantee of equal protection.[1] The Court concludes that the statute is constitutional.

---

[1] Several sentences in Defendants' briefing suggest that they are challenging Section 922(g)(5)(A) both on its face and as applied. (Obj. at 2; ECF No. 58 at 1, 7.) Despite this,

### I. Second Amendment

The Second Amendment protects an individual's right "to keep and bear Arms." U.S. Const. amend. II; *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). Defendants claim this right should extend to illegal aliens, but readily admit that Eighth Circuit precedent forecloses their argument. In *United States v. Flores*, the defendant made the same argument. 663 F.3d 1022 (8th Cir. 2011) (per curiam), *cert. denied*, 567 U.S. 938 (2012). The district court determined that illegal aliens do not have a Second Amendment right to bear arms, and even if they did, Section 922(g)(5) would be constitutional as a "presumptively lawful regulatory measure." *United States v. Flores*, No. 10-CR-178 (JNE/JSM), 2010 WL 4721069, at *2–4 (D. Minn. Sept. 17, 2010), *report and recommendation adopted*, 2010 WL 4720223, at *1 (D. Minn. Nov. 15, 2010). The Eighth Circuit affirmed and noted that "the protections of the Second Amendment do not extend to aliens illegally present in this country." *Flores*, 663 F.3d at 1023 (citation omitted). Thus, under

---

the Court discerns only facial challenges in Defendants' arguments. In an as-applied challenge, the plaintiff challenges the law only as-applied to him or herself. *Phelps-Roper v. Ricketts*, 867 F.3d 883, 896 (8th Cir. 2017) (internal quotation and citation omitted). But Defendants are not challenging Section 922(g)(5)(A) "because of the way it was applied to the particular facts of [their] case," but are instead claiming that the statute that they were indicted under is unconstitutional on its face. *Id.* (citation omitted).

3

controlling Eighth Circuit precedent, Defendants' Second Amendment challenge to the Indictment fails.[2]

## II. Equal Protection

The Fifth Amendment's Due Process Clause includes a "prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 570 U.S. 744, 774 (2013) (citations omitted). Defendants claim that Section 922(g)(5)(A) violates this prohibition by discriminating against illegal aliens.

### A. *Level of Scrutiny*

The first step in resolving Defendants' equal protection challenge is to determine the applicable level of scrutiny. Rational basis review is ordinarily applied to an equal protection challenge unless the "law burdens a fundamental right, targets a suspect class, or has a disparate impact on a protected class and was motivated by a discriminatory intent." *New Doe Child #1 v. United States*, 901 F.3d 1015, 1027 (8th Cir. 2018) (citations omitted). Defendants claim that a heightened level of scrutiny should apply for two reasons: (1) because Section 922(g)(5)(A) implicates a fundamental right; and (2) relying on *Plyler v. Doe*, 457 U.S. 202 (1982), because Section 922(g)(5)(A) risks making illegal

---

[2] Defendants acknowledge that this argument was destined to fail but believe that *Flores* is "ripe for reconsideration" so they seek to preserve this issue for appeal. (ECF No. 58 at 10–11; Obj. at 12.) As Defendants acknowledge, the Court is bound by the Eighth Circuit's holding in *Flores*. (Obj. at 12); *Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003).

aliens an "underclass" by denying them "access to a key aspect of society." (Obj. at 4–7.) Neither argument is persuasive, so the Court applies rational basis review.

As discussed above, illegal aliens do not have a Second Amendment right to possess firearms, *Flores*, 663 F.3d at 1023, so it follows that illegal aliens do not have a "fundamental right" to possess firearms. Several circuit courts of appeal have declined to apply a heightened level of scrutiny to an equal protection challenge to Section 922(g)(5), with at least one explicitly holding that Section 922(g)(5) does not implicate a fundamental right. *See United States v. Carpio-Leon*, 701 F.3d 974, 982 (4th Cir. 2012) (holding that "no fundamental constitutional right is at stake" in an equal protection challenge to Section 922(g)(5)); *see also United States v. Mirza*, 454 F. App'x 249, 258 (5th Cir. 2011) (applying rational basis review to an equal protection challenge to Section 922(g)(5)); *United States v. Huitron-Guizar*, 678 F.3d 1164, 1167 (10th Cir. 2012) (same). Defendants do not have a fundamental right to possess firearms, so their challenge does not trigger strict scrutiny on this basis.

Nor is Defendants' *Plyler* argument convincing. In *Plyler*, the Supreme Court applied a heightened level of scrutiny to a Texas law that permitted school districts to deny admission to illegal aliens. 457 U.S. at 205, 223–24. Defendants contend the same heightened scrutiny should apply here, because Section 922(g)(5) poses the same risks the Supreme Court was concerned with in *Plyler*—that depriving illegal aliens the right to possess a firearm will relegate them to a "permanent caste" that is "'denied the benefits

5

that our society makes available to citizens and lawful residents.'" (Obj. at 6 (quoting *Plyler*, 457 U.S. at 218–19).) But there is a key difference: *Plyler* involved a state law that discriminated against illegal aliens, whereas Defendants are challenging a federal statute. The Supreme Court has explained that an equal protection challenge to a state law that makes an alienage classification "involves significantly different considerations" than an equal protection challenge to a federal law that makes a similar classification. *Mathews v. Diaz*, 426 U.S. 67, 84–85 (1976). Based on the federal government's powers over immigration, it routinely and permissibly classifies people based on citizenship, but a similar classification by a state "has no apparent justification." *Id.* at 85; *see also Plyler*, 457 U.S. at 219 n. 19 ("[A]lienage classifications may be intimately related to the conduct of foreign policy, to the federal prerogative to control access to the United States, and to the plenary federal power to determine who has sufficiently manifested his allegiance to become a citizen of the Nation. No State may independently exercise a like power."); *City of Chicago v. Shalala*, 189 F.3d 598, 605 (7th Cir. 1999) (recognizing the distinction between a federal and state alienage classification and refusing to apply *Plyler* to a federal law making such a classification). Thus, Defendants' reliance on *Plyler* is misplaced.

And even beyond the distinction between federal and state laws, courts have been reluctant to extend *Plyler* to factual scenarios not involving the same "unique circumstances" present in that case. *LeClerc v. Webb*, 419 F.3d 405, 420–21 (5th Cir. 2005) (refusing to apply *Plyler*'s heightened scrutiny when plaintiffs entered the country

6

voluntarily and "face[d] no hurdle as debilitating as denial of primary and secondary education"); *Uriostegui v. Ala. Crime Victims Comp. Comm'n*, No. 2:10-cv-1265-PWG, 2010 WL 11613802, at *19 (N.D. Ala. Nov. 16, 2010) ("[F]ederal courts have generally declined to extend[] *Plyler*'s use of heightened scrutiny to illegal immigrant classifications . . . .") (collecting cases) *report and recommendation adopted*, 2011 WL 13285298 (N.D. Ala. Jan. 12, 2011).

In their objection, Defendants claim that *Diaz*'s distinction between state laws and federal laws is a distinction without a difference. Acknowledging that Congress's ability to treat illegal aliens differently from citizens is rooted in the federal government's control over immigration, Defendants claim that this distinction is irrelevant here because Section 922(g)(5) is not an immigration law. (Obj. at 6–7.) But the case law gives no indication that Congress can only classify illegal aliens in laws directly relating to immigration. To the contrary, the federal government may "regulate the conditions of entry *and residence* of aliens." *Diaz*, 426 U.S. at 84 (emphasis added); *see also Rodriguez ex rel. Rodriguez v. United States*, 169 F.3d 1342, 1348–1349 (11th Cir. 1999) (rejecting the argument that rational basis review only applies to federal laws related to naturalization and aliens' entry and exit of the country).

Defendants also claim that the *Diaz* distinction is inapplicable because, unlike in *Diaz*, Section 922(g)(5) does not regulate a benefit. (Obj. at 7.) But Defendants' only support for this argument is a passage from *Plyler* explaining that the right to education,

7

while not guaranteed by the Constitution, is more than a mere public benefit. (*Id.* (quoting *Plyler*, 457 U.S. at 221).) Even accepting Defendants' contention that the right to possess a firearm is more important than entitlement to a public benefit, (*i.e.,* that it is more akin to a constitutional right than a public benefit), the Court has already determined that Defendants do not have the right to possess a firearm, so their argument fails. The principle remains that "Congress may make rules as to aliens that would be unacceptable if applied to citizens"—whether or not they involve public benefits. *Demore v. Kim*, 538 U.S. 510, 522 (2003) (citations omitted).

### B. Rational Basis Review

Because Defendants' arguments for a heightened level of scrutiny fail, and because alienage classifications are generally given rational basis review, the Court will uphold Section 922(g)(5)(A) "'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Brikova v. Holder*, 699 F.3d 1005, 1008 (8th Cir. 2012) (citation omitted). In other words, a law is valid when there is a "plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992) (citations omitted).

Section 922(g)(5)(A) survives rational basis review. As the Fourth Circuit has explained, there is a rational relationship between Section 922(g)(5) and "the legitimate government goal of public safety." *Carpio-Leon*, 701 F.3d at 982. For one, illegal aliens are more difficult for the government to track[3] and may be more likely to assume a false identity. *Id.* at 983 (citing *Huitron-Guizar*, 678 F.3d at 1170); *see generally* S. Rep. No. 90-1501, at 22 (1968) ("The ready availability, that is, the ease with which any person can anonymously acquire firearms (including criminals, juveniles, without the knowledge or consent of their parents or guardians, narcotic addicts, mental defectives, armed groups who would supplant duly constituted public authorities, and others whose possession of

---

[3] Defendants contend that the comparative difficulty of tracking illegal aliens is not a valid basis to uphold the law because federal law prohibits tracking firearm purchasers. (Obj. at 10 (citing 18 U.S.C. § 926).) To the contrary, federal law requires importers, manufacturers, and dealers to record firearms sales, among other things. 18 U.S.C. § 923(g)(1)(A). The statutory language that Defendants cite—the flush language of Title 18, United States Code, Section 926(a)—merely prohibits the Attorney General from promulgating any rules or regulations that would establish a "system of registration of firearms, firearms owners, or firearms transactions or dispositions." 18 U.S.C. § 926(a) (flush language). Courts have interpreted this provision to "clearly" reflect "Congress' concern about any attempt by [Bureau of Alcohol, Tobacco, and Firearms] to establish a national firearms registry." *RSM, Inc. v. Buckles*, 254 F.3d 61, 67 (4th Cir. 2001). The Firearm Owners' Protection Act reaffirmed that firearm dealers must track the disposition of firearms they sell. Firearm Owners' Protection Act, Pub. L. No. 99-308, §§ 103(7), 106(4). In certain circumstances, including "in the course of a bona fide criminal investigation," the Attorney General may inspect these records. 18 U.S.C. § 923(g)(1)(B)(iii); *see also id.* §§ 923(g)(1)(A)–(B) (permitting inspection of these records in other scenarios). Because federal law requires sellers to track firearms they sell, and because the government may inspect these records in the course of a criminal investigation, the government has an interest in ensuring that firearm purchasers are traceable. Congress could have determined that illegal immigrants are more difficult to track and that barring them from possessing firearms would benefit public safety.

firearms is similarly contrary to the public interest) is a matter of serious national concern.").

Defendants acknowledge that Congress passed firearms legislation with an interest in "combating the increasing prevalence of crime," but maintain that this interest bears no relationship to the prohibition for illegal aliens.[4] (Obj. at 8 (quoting S. Rep. No. 90-1097, at 2144, 90th Cong. 2d Sess. (Apr. 29, 1968)).) As noted above, the Court finds a rational relationship between Section 922(g)(5) and the goal of public safety. Congress rationally concluded that prohibiting illegal aliens from possessing firearms would protect public safety. *See* Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, § 1201, 82 Stat. 197, 236 (1968) (finding and declaring that allowing illegal

---

[4] Defendants also seem to argue that Section 922(g)(5) cannot survive any level of review because it was hastily enacted "with little discussion, no hearings, and no report." (Obj. at 8 (citing David T. Hardy, *The Firearms Owners' Protection Act: A Historical and Legal Perspective*, 17 Cumb. L. Rev. 585, 627 n.231 (1987)).) This part of the law review article is referring to the Omnibus Crime Control and Safe Streets Act of 1968, the enactment in which Section 922(g)(5)(A) originated. Regardless of the manner in which this statute was enacted, Congress still determined that firearm possession by certain people (specifically those "whose possession of such weapons is . . . contrary to the public interest") contributed to "lawlessness and violent crime in the United States." Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, § 901(a)(2), 82 Stat. 197, 225 (1968). It also specifically found that firearm possession by illegal aliens threatened public safety. *Id.* § 1201, 82 Stat. 197, 236. Although the legislative history relating to Section 922(g)(5)(A) is sparse, such evidence is not required to pass rational basis review. On rational basis review, the Court questions whether there is "any reasonably conceivable state of facts that could provide a rational basis for the classification," but does not ask whether that reason actually motivated Congress. *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) (citations omitted). For that reason, and because Congress need not articulate its reasons for enacting a law, "the absence of legislative facts explaining the distinction on the record has no significance in rational-basis analysis." *Id.* (cleaned up).

aliens to possess firearms would, among other things, be a threat to the safety of the President and Vice President and to the "continued and effective operation of" state and federal government).

Defendants also claim that Section 922(g)(5)(A) fails rational basis review because it is based on stereotypes about illegal aliens that empirical research has proven to be incorrect. (Obj. at 8–9.) Although the supposition that illegal aliens pose a greater threat to public safety may rest on a generalization, "general laws deal in generalities," and that does not defeat the fact that Congress rationally concluded that barring illegal aliens from possessing firearms would yield public safety benefits. *Huitron-Guizar*, 678 F.3d at 1170.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The Report and Recommendation (ECF No. 76) is ACCEPTED; and
2. Defendants' motion to dismiss (ECF No. 57) is DENIED.

Dated: August 23, 2021                         BY THE COURT:

                                               s/Nancy E. Brasel
                                               Nancy E. Brasel
                                               United States District Judge